# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
January 31, 2012 Session

## HEFFERLIN + KRONENBERG ARCHITECTS, PLLC, v. CLP DEVELOPMENT, LLC, et al.

### Appeal from the Chancery Court for Hamilton County
### No. 10-1015   Hon. W. Frank Brown, III.,, Chancellor

### No. E2011-01601-COA-R3-CV-FILED-APRIL 9, 2012

Plaintiff brought this action claiming, inter alia, that it was entitled to a mechanics' lien on the subject property.  Defendant filed Motions to Dismiss, one ground being that the Complaint failed to state a cause of action.  The Trial Court subsequently ruled that the Complaint did not establish a cause of action to entitle plaintiff to a lien on the property. Plaintiff has appealed and we hold that upon review of the Complaint, and applying the rules governing the test of the sufficiency of the allegations in the Complaint, that the Complaint states a cause of action.  We vacate the Trial Court's Judgment and remand for further proceedings.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Vacated.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  D. MICHAEL SWINEY, J.,  and JOHN W. MCCLARTY, J., joined.

Timothy M. Gibbons, John B. Critchfield and Amanda N. Ray, Chattanooga,  Tennessee, for the appellant, Hefferlin + Kronenberg Architects, PLLC.

James T. Williams, Chattanooga, Tennessee, for the appellees, Chattanooga Bank Associates and LTE Corp.

**OPINION**

Plaintiff, Hefferlin+Kronenberg Architects, PLLC ("H+K"), filed a Verified Complaint for Enforcement of Mechanics' Lien, Breach of Contract and Other Claims, against defendants CLP Development, LLC, CBB Hotel Management, LLC, Chattanooga Bank Association ("CBA"), and LTE Corporation. H+K asserted that it had entered into an agreement with CLP and/or CBB whereby H+K was to provide design services for a new hotel to be located in the renovated Chattanooga Bank Building. H+K asserted that it provided the services, but CLP/CBB refused to pay. H+K filed a Notice of Lien, which was attached as an exhibit, and asserted that it had fully performed its duties under the agreement, and that CLP/CBB owed $104,864.32. H+K asserted that CBA and LTE were nominal parties in interest because they had a potential ownership interest in the property. H+K further asserted claims of breach of contract, quantum meruit, etc., and asserted that they had a valid mechanics' lien on the property pursuant to Tenn. Code Ann. §66-11-101, and sought damages of $104,864 plus interest, attorney's fees, etc., for a total amount of $127,500.

H+K filed a Motion for Default Judgment, and CBA and LTE Corp. filed a Response, stating that there had been no visible commencement of work or operations on the subject property, which was required pursuant to Tenn. Code Ann. §66-11-104 for a lien to attach. CBA and LTE also filed a Motion to Dismiss, alleging that plaintiff's claims were not ripe.

H+K then filed a First Amended Verified Complaint for Enforcement of Mechanics' Lien, Breach of Contract and Other Claims, and added the following: "In preparation for and/or commencement of operations on the Project, on information and belief, the owners gave notice to all tenants and took actions to remove the tenants from the property. The owners have, on information and belief, performed certain testing activities which may have resulted in certain work being performed for the benefit of the Project." Thus, H+K alleged that visible commencement of operations had occurred.

CBA and LTE filed a Second Motion to Dismiss for Failure to State a Claim and Motion for Order to Release Lien, stating that there had been no visible commencement of operations. Plaintiff filed a Response, asserting there were genuine issues of material fact regarding whether there had been a visible commencement of operations, and attached various news articles about the project. CBA and LTE filed a Reply, arguing that preparatory work done prior to the actual improvements was not considered visible commencement of operations.

The Trial Court entered a Default Judgment against defendants CLP Development, LLC, and CBB Hotel Management, LLC, due to their failure to file an Answer. The Court also entered an Order granting LTE's Motion to Dismiss, and taking CBA's Motion to

Dismiss under advisement. Thereafter, the Court entered a Memorandum Opinion and Order, and noted that there was no reason shown to hold LTE liable because LTE was not shown to have an ownership interest in the property. The Court stated the only remaining issue was whether H+K was entitled to a lien on real estate owned by CBA. The Court noted that it applied the standard of review for a motion to dismiss, and that it did not consider the news articles submitted by plaintiff as evidence because they were not proper documents for summary judgment. The Court found that a lien can only attach at the time of visible commencement of operations to improve the property pursuant to the lien statute. The Court found that, in this case, the removal of tenants or performing of "testing" was not an improvement of the property, and there had been no visible commencement of operations. Since the Court found that there could be no lien, it dismissed the claims against CBA.

Plaintiff appealed and has raised these issues:

1. Whether the Trial Court erred in applying the standard of review for motions to dismiss when the Court considered information outside of the Amended Complaint in reaching its decision?

2. Whether the Trial Court failed to properly apply the motion to dismiss standard when it tested the merits of the lien claim and not solely the sufficiency of the Amended Complaint?

3. Whether the Trial Court erred in holding that no improvement was made to the property when the Amended Complaint sufficiently alleged facts to the contrary?

4. Whether the Trial Court disregarded the language of the lien law and the legislature's intent when it held that the owners' actions did not amount to a visible commencement of operations?

5. Whether the Trial Court ignored the new substantial compliance standard in the lien law and improperly applied the more stringent strict compliance standard?

H+K argues the Trial Court did not properly apply the motion to dismiss standard, because the Trial Court considered information outside the Complaint and did not take all of the allegations in the Complaint as true. Our Supreme Court recently addressed at length the proper standard of review for a motion to dismiss in Tennessee, as follows:

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the

strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action.'"

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

To be sufficient and survive a motion to dismiss, a complaint must not be entirely devoid of factual allegations. Tennessee courts have long interpreted Tennessee Rule of Civil Procedure 8.01 to require a plaintiff to state " 'the facts upon which a claim for relief is founded.' " A complaint "need not contain detailed allegations of all the facts giving rise to the claim," but it "must contain sufficient factual allegations to articulate a claim for relief." "The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." Thus, as we observed in <u>Leach</u>,

> "While a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, it must contain direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested ... by the pleader, or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial."

124 S.W.3d at 92. Moreover, courts are not required to accept as true assertions that are merely legal arguments or "legal conclusions" couched as facts.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426-427 (Tenn. 2011)(citations omitted).

The Court rejected the federal "plausibility" standard, which requires the courts to "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth", then "determin[e] whether the well-pleaded facts, assumed as true, 'plausibly give rise to an entitlement to relief.'" *Id.* at 429. The Court stated the federal standard of review is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense", and that if the facts pleaded "do not permit the court to infer more than the mere possibility of misconduct," then the complaint is insufficient because it "has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.*

Our Supreme Court went on to explain:

This fact-weighing and merits-based determination aspect of the [federal] standard is at odds with the well-established principle in Tennessee that a Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. It also conflicts with the strong preference embodied in the Tennessee Rules of Civil Procedure that cases stating a valid legal claim brought by Tennessee citizens be decided on their merits. Furthermore, the [federal] standard requiring the trial court to scrutinize and weigh the well-pleaded facts to determine if they present a plausible claim, and allowing the court to dismiss the case at the pleading stage if it determines, in light of its "judicial experience and common sense," that the claim is not plausible, raises potential concerns implicating the Tennessee constitutional mandate that "the right of trial by jury shall remain inviolate." Tenn. Const. art. I, § 6.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 432 (Tenn. 2011)(citations omitted).

Applying the standard, it is clear that the Trial Court improperly weighed the plaintiff's allegations rather than "constru[ing] the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *See Webb*. In its First Amended Complaint, H+K alleged that it had provided architectural design services and Instruments of Service for the project to locate a hotel in the renovated Chattanooga Bank Building. H+K alleged that it had an agreement with CLP and/or CBB to provide these design services, and that one or both of these defendants acted as the owner or on the owner's behalf. H+K alleged that CLP and/or CBB had refused to pay H+K for these services.

H+K also alleged that "In preparation for and/or commencement of operations on the Project, on information and belief, the owners gave notice to all tenants and took actions to remove the tenants from the property. The owners have also, on information and belief, performed testing activities which may have resulted in certain work being performed for the benefit of the Project." H+K further alleged that "visible commencement of operations occurred after H+K completed its design services and Instruments of Service. H+K was not fully aware of the activities relating to commencement of operations at the time it filed its

original Verified Complaint. Such commencement included, among other things, testing activities, moving tenants and equipment out of the real property at issue and related activities."

The Trial Court stated that it was assuming these allegations to be true and had considered no other information. The Trial Court then examined the lien statute and its definitions of "improvement" and "visible commencement of operations"[1] and concluded that "the removal of tenants preparatory to construction" and "testing" were not improvements pursuant to the statute, and that they also did not qualify as a visible commencement of operations. The Court then held that the allegations did not provide H+K with lien rights.

Our review of the Trial Court's Memorandum Opinion demonstrates that the Trial Court engaged in a type of "plausibility" standard of review which our Supreme Court rejected in *Webb*.

Plaintiff's Complaint not only alleges the conclusion that "improvements" and "visible

---

[1] "Improvement" is defined as "the result of any action or any activity in furtherance of constructing, erecting, altering, repairing, demolishing, removing, or furnishing materials or labor for any building, structure, appurtenance to the building or structure, fixture, bridge, driveway, private roadway, sidewalk, walkway, wharf, sewer, utility, watering system, or other similar enhancement, or any part thereof, on, connected with, or beneath the surface; the drilling and finishing of a well, other than a well for gas or oil; the furnishing of any work and labor relating to the placement of tile for the drainage of any lot or land; the excavation, cleanup, or removal of hazardous and nonhazardous material or waste from real property; the enhancement or embellishment of real property by seeding, sodding, or the planting on real property of any shrubs, trees, plants, vines, small fruits, flowers, nursery stock, or vegetation or decorative materials of any kind; the taking down, cleanup, or removal of any existing shrubs, trees, plants, vines, small fruits, flowers, nursery stock, or vegetation or decorative materials of any kind then existing; excavating, grading or filling to establish a grade; the work of land surveying, as defined in § 62-18-102, and the performance of architectural or engineering work, as defined in title 62, chapter 2, with respect to an improvement actually made to the real estate."

"Visible commencement of operations" is defined as "the first actual work of improving upon the land or the first delivery to the site of the improvement of materials, that remain on the land until actually incorporated in the improvement, of such manifest and substantial character as to notify interested persons that an improvement is being made or is about to be made on the land, excluding, however, demolition, surveying, excavating, clearing, filling or grading, placement of sewer or drainage lines or other underground utility lines or work preparatory therefor, erection of temporary security fencing and the delivery of materials therefor."

Tenn. Code Ann. §66-11-101. Notably, defendants argue that any type of "preparatory work" would not qualify as "visible commencement", but this is not what the statute says - it merely refers to "work preparatory" to "placement of sewer or drainage lines or other underground utility lines" as being excluded from the definition. *Id.*

commencement of operations" had begun on the project, but goes on to allege facts to support those conclusions, including that "the owners gave notice to all tenants and took actions to remove the tenants from the property", that they "performed certain testing activities which may have resulted in certain work being performed for the benefit of the Project", and that "commencement included, among other things, testing activities, moving tenants and equipment out of the real property at issue and related activities."

We must construe the Complaint liberally, presuming all of the factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. Applying this test, the Trial Court erred in dismissing the plaintiff's claims. Plaintiff alleged that testing activities had been done which may have resulted in work being performed, but did not detail what these testing activities or work purportedly done consisted of. Plaintiff also alleged that tenants and equipment had been removed from the building, and further alleged that it had provided design services for the project, and that work was performed for the benefit of the project. The lien statute requires a showing of "improvements" and "visible commencement of operations," before the lien can attach, but for the Court to rule as a matter of law that plaintiff's allegations could not give rise to a lien claim or could, under no circumstances, show that "improvements" or "visible commencement of operations" had taken place, would be impermissibly weighing the plaintiff's allegations and test the strength of plaintiff's evidence, rather than allowing the Complaint a liberal construction and giving plaintiff the benefit of all reasonable inferences. Essentially, the Trial Court held that plaintiff could prove no set of facts in support of the claim that would entitle it to relief, when the court does not know exactly what activities had taken place? As stated in *Webb*, our procedural rules "require a plaintiff to state 'the facts upon which a claim for relief is founded' in the complaint, but "need not contain detailed allegations of all the facts giving rise to the claim.*"* *Webb*, at 426. Rather, a "short and plain statement" is all that is required, from which an "inference may fairly be drawn that evidence on these material points will be introduced at trial." Tenn. R. Civ. P. 8; *Webb*, at 427.

In this case the plaintiff was never given the chance to demonstrate what evidence it actually had on these allegations, and as quoted above:

> This fact-weighing and merits-based determination . . . is at odds with the well-established principle in Tennessee that a Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. It also conflicts with the strong preference embodied in the Tennessee Rules of Civil Procedure that cases stating a valid legal claim brought by Tennessee citizens be decided on their merits. Furthermore, the [federal] standard requiring the trial court to scrutinize and weigh the well-pleaded facts to determine if they present a plausible claim, and allowing the court to dismiss the case at the pleading stage if

-7-

it determines, in light of its "judicial experience and common sense," that the claim is not plausible, raises potential concerns implicating the Tennessee constitutional mandate that "the right of trial by jury shall remain inviolate." Tenn. Const. art. I, § 6.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 432 (Tenn. 2011)(citations omitted).

This is precisely the fact-weighing and merits-based determination in which the Trial Court engaged. Plaintiff provided a "short and plain statement" sufficient to allow the Court to fairly draw an inference that evidence on these material points would be introduced at trial. Moreover, a trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Webb*.

Accordingly, we vacate the Judgment of the Trial Court and remand for further proceedings consistent with this opinion and CBA is taxed with the costs of the appeal.

_____
HERSCHEL PICKENS FRANKS, P.J.